IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

BRYAN FISCHER,

  Plaintiff,

v.          CASE NO. 1:14-cv-196-WS-GRJ

CAROLYN COLVIN, Commissioner
of Social Security,

  Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for disability insurance benefits and Supplemental Security Income.  ECF No. 20.   The Commissioner has answered, and both parties have filed briefs outlining their respective positions.  ECF Nos. 30, 31, 34.  For the reasons discussed below, the undersigned recommends that the Commissioner's decision be **REVERSED AND REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g).

# I.  PROCEDURAL HISTORY

Plaintiff filed an application for DIB and SSI benefits on March 24, 2010, claiming disability commencing on January 1, 2008, due to a back injury, hypersomnia, mental/emotional difficulties, depression, anxiety, a herniated disc, and narcolepsy.  R. 200-211, 238.  The claim was denied initially and on reconsideration, and Plaintiff  requested a hearing, which was held before an Administrative Law Judge ("ALJ") on October 12, 2012.  R. 35-52.  On December 7, 2012, the  ALJ found Plaintiff not disabled and denied benefits.  R. 13-28.  The Appeals Council denied review.  R. 1-5.  This appeal followed.

Plaintiff asserts three issues for review: (1) The ALJ failed to correctly evaluate the medical opinion evidence, particularly that of treating physician Dr. Louise Buhrmann; (2) The ALJ failed to properly evaluate his subjective allegations of pain and limitation; and (3) The ALJ did not properly determine that Plaintiff can return to his past work as a banquet waiter and did not meet the Commissioner's burden at Step Five in making an alternative finding.  ECF No. 30.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4]  However, the

---

[1] *See* 42 U.S.C. § 405(g) (2015).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986)

district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

---

(finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2015 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

---

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of

---

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.
3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

employment at the appropriate level of exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner**.**

---

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] *See id.*

# III.  SUMMARY OF THE RECORD

## A.  *Findings of the ALJ*

The ALJ found that Plaintiff has the severe impairments of degenerative disc disease of the lumbar spine and an affective disorder. The ALJ found that Plaintiff's severe impairments did not meet or medically equal a listed impairment.  The ALJ determined that Plaintiff retained the residual functional capacity for light work with no nonexertional limitations. In making the RFC determination, the ALJ reviewed Plaintiff's medical records, including the records of Plaintiff's treatment with Louise I. Buhrmann, M.D.  In connection with her treatment, Dr. Buhrmann completed a Mental Capacity Assessment finding that Plaintiff had marked limitations in several functional areas.  The ALJ determined that Dr. Buhrmann's opinion was not entitled to controlling weight.  The ALJ also determined that Plaintiff's subjective complaints of disabling symptoms and limitations should not be fully credited.  Based on the ALJ's conclusion that Plaintiff retained the RFC for light work, with no nonexertional limitations, the ALJ found that Plaintiff was capable of performing his past relevant work as a Banquet Waiter.  The ALJ alternatively found that there were

other jobs in the national economy that Plaintiff could perform, given his

RFC, and that a finding of "not disabled" was appropriate under the

framework of Medical-Vocational Rule 202.21.  R. 15-27.

## B.  *Medical Evidence*

Because the appeal stems from the ALJ's assessment of Plaintiff's

mental impairments the Court's review will focus on those records.[21]

Plaintiff saw Alec A. Lebedun, Ph.D., for a neuropsychological

evaluation on September 2, 2008.  R. 455-62.  Dr. Lebedun's report states

that Plaintiff presented as anxious, with a distractible thought process,

required frequent breaks, and was somewhat rigid and obsessive.  R. 566-

67.  His MMPI-2 results reflected "a significant level of distress, marked by

feelings of depression, anxiety, and other directed anger. . . . An underlying

sense of hopelessness is also noted, along with a sense of isolation and

alienation[,]" feelings of inadequacy, and guilt.  Dr. Lebedun concluded that

Plaintiff's consistent problems with visual processing, while evidencing no

---

[21] The ALJ did not discuss Plaintiff's records that predate his alleged disability-onset date.  His review of the medical evidence begins with a neuropsychological evaluation in September 2008.  R. 19.  The Plaintiff's memorandum reviews earlier records, but for purposes of this recommendation the Court will focus on the same records relied on by the ALJ.

problems with auditory processing, raised concern regarding neurological factors on Plaintiff's functioning.  R. 461.  Dr. Lebedun observed that Plaintiff "does appear to be experiencing a significant distress, marked by feelings of depression, anxiety, and anger.  The levels of this distress appear of sufficient intensity as to impact cognitive functioning."  *Id.*  He opined that Plaintiff would likely "struggle in attempts to find and hold a job of any kind.  He becomes agitated and has problems focusing on most tasks for any period of time."  R. 462.

On November 11, 2008, Dr. Jon Peters, M.D. noted Plaintiff's complaints of overwhelming fatigue and concluded that "his history is somewhat suggestive of idiopathic daytime hypersomnolence."  R. 453-54. Dr. Peters recommended that Plaintiff be treated for his depression, undergo a brain MRI, and have another sleep study.  *Id.*  Plaintiff informed Dr. Peters that he could not afford the sleep study or MRI.  R. 469.  In July 2009, Dr. Peters noted that Plaintiff's persistent fatigue had continued and concluded "he probably has idiopathic daytime hypersomnolence, a variant of narcolepsy."  R. 467.  Plaintiff was started on Adderall but followup notes indicate that he did not respond to it.  R. 466.

A Virginia state consultative mental status evaluation by Dr. Mimi Khine, M.D., in October  2010 documented depressed and preoccupied thought content with guilt for not being able to function normally; difficulties in thought processing; sad mood; and fair judgment with limited insight.  R. 491-92.  Plaintiff was diagnosed with Major Depressive Disorder, as well as being at risk for cognitive decline.  *Id.*  Dr. Khine observed that Plaintiff "may" be able to perform simple tasks well but that he "has been depressed for so many years and did not receive[] treatment consistently" and as a result "some functional area[s] of his brain tissues have become dysfunctional and ha[ve] declined in cognitive function."  *Id.*

In February 2011, Plaintiff presented at the ER for complaints of chronic fatigue.  No physical cause was found.  R. 503-07.

Plaintiff sought assistance with treatment through the Jewish Social Service Agency ("JSSA").  Records from February through April of 2011 indicate he sought treatment for problems including his depression and constant fatigue.  R. 513-525.  Plaintiff was depressed and anxious, with impaired insight and concentration.  R. 515, 519-520.  Plaintiff was diagnosed with Nicotine Related Disorder NOS; Major Depressive

Disorder, Recurrent, in Partial Remission; ADHD, Predominantly Inattentive Type; and Personality Disorder NOS.  Dr. Thomas Kobylski recommended treatment with Wellbutrin.  R. 517-518.

Lakeside Behavioral Healthcare records from May 2011 reflect findings of a memory impairment for both recent and remote events, poor concentration,  poor judgment and a diagnosis of Depressive Disorder NOS.  R. 534-537, 586-589.  In June 2011, Plaintiff's mood was anxious and dysphoric; he was continued on Wellbutrin.  R. 583-84; *see* R. 542 (July 2011 appointment for medication management).   Plaintiff subsequently was treated with Effexor and then Cymbalta. R. 592, 595.

In December 2011, psychiatrist Dr. Louise I. Buhrmann noted that Plaintiff had been on Prozac for a few months, but was still napping repeatedly during the day and unable to hold a job, and he could not "think clearly" when on his ADD medication.  R. 553-54.  A subsequent note from Lakeside Behavioral Healthcare reflects he had not taken medication and was feeling down, with "lapses in perception."  R. 599.  Plaintiff  was prescribed Paxil and Trazodone.  R. 600.

In February and March 2012, Dr. Buhrmann observed that Plaintiff's facial expressions were constricted, his mood depressed, his thoughts preoccupied, and "decision making skills were paralyzed."  R. 553; 558. Plaintiff seemed to have memory problems, his eye contact was fleeting, and he exhibited variable reality testing.  R. 555-556.  Dr. Buhrmann assessed Major Depression and a GAF of 40 "at this time and in the last year."  R. 556.

In April 2012, Dr. Buhrmann completed a Mental Capacity Assessment, assessing Plaintiff with marked limitation in the ability to: (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) sustain an ordinary routine without special supervision; (5) work in coordination with or in proximity to others without being distracted by them; (6) complete a normal workday without interruptions from psychologically based symptoms; and (7) complete a normal workweek without interruptions from psychologically based symptoms.  R. 545.  Dr. Buhrmann opined that Plaintiff would have moderate difficulties with: (1) performing at a

consistent pace with a one hour lunch break and two 15 minute rest

periods; and (2) responding appropriately to changes in the work setting.

R. 545-546.  Dr. Buhrmann determined that Plaintiff would likely have two

absences in an average month.  R.  545.

     **State Agency Mental RFC Opinions:**  In October 2010, Dr. David

Deaver, Ph.D. reviewed the record and opined that Plaintiff experiences

moderate difficulties both in maintaining social functioning and in

maintaining concentration, persistence, or pace.  R.  62, 75.  Regarding

social interaction limitations, Dr. Deaver concluded Plaintiff would be

moderately limited in interacting appropriately with the general public, and

moderately limited in accepting instructions and responding appropriately

to criticism from supervisors.  R. 65, 78.  Dr. Deaver concluded that

Plaintiff's ability to maintain attention and concentration for extended

periods was moderately limited, and his ability to work in coordination with

or in proximity to others without being distracted by them was also

moderately limited.  *Id.*  These limitations were opined to stem from

Plaintiff's depression.  R. 66, 79.

     In July 2011, Dr. Arthur Hamlin, Psy. D.,  reviewed the record.  R.

95-96, 99-100, 102, 116, 119-120, 122.   In addition to the limitations noted

by Dr. Deaver, Dr. Hamlin found moderate limitations in the ability to

respond appropriately to changes in the work setting.  R. 100, 102-103,

120.  He opined that Plaintiff only "appears capable of adjusting to smaller

changes in a stable, non-stressful setting."  R. 101, 103, 121, 123.  He may

also "have some difficulty in completing an 8 hour day without experiencing

mild depressive symptoms[.]"  R. 102, 120, 122.  Dr. Hamlin assessed

moderate limitations in Plaintiff's ability to get along with coworkers or

peers without distracting them or exhibiting behavioral extremes, as well as

his ability to perform at a consistent pace without an unreasonable number

and length of rest periods.  *Id.*

### C. *Summary of Hearing Testimony*

Plaintiff was 51 years old at the time of the hearing, has a four-year

college degree, and last worked as a banquet waiter.  R. 38-39, 44.

Plaintiff testified that his back pain is his primary physical problem.  R. 39.

Regarding his emotional/mental problems, Plaintiff testified that he

experiences "tremendous fatigue" and hypersomnia.  *Id.*  He stated that he

gets up and lays down throughout the day.  R. 41.  He is not social, his

concentration is very limited, and he is unable to "stay on task with

anything."  R. 42, 49.  Plaintiff described having a very low energy level and no interest in hobbies or activities.   R. 49-50.

Plaintiff testified he regularly treated with Dr. Buhrmann, but was in the process of changing doctors due to a change in insurance.  R. 41.  Dr. Buhrmann prescribed antidepressants and was transitioning Plaintiff into stimulants, such as Ritalin and Provigil, for his long-term depression.  R. 41-42.

Plaintiff testified that he lives with his parents and interacts primarily just with them, tending to socially isolate himself.   R. 43, 47.  He takes walks of a few blocks but does not have the energy "to exercise beyond that" and must lie down after walking.  R. 44, 48.  He drives short distances to obtain supplies, and afterwards immediately lies down and goes to sleep.  R. 43, 50-51.  Plaintiff does not have the mental energy to read, but watches television.  R. 44.

Plaintiff testified that he would not be able to return to his work as a banquet waiter because of his hypersomnia and back problems.  R. 45-46. He has been under treatment with psychiatrist and psychologists since he was a teenager.  R. 51.  No vocational expert was present at the hearing.

## IV.  Discussion

### A.  *ALJ's Assessment of Medical Opinions*

Plaintiff contends that the ALJ failed to apply the correct legal

standards to the medical opinions of record regarding Plaintiff's mental

functioning.  In particular, Plaintiff argues that the ALJ erred in rejecting Dr.

Buhrmann's opinion.  Dr. Buhrmann's Mental Capacity Assessment,

summarized above, assessed Plaintiff with marked limitation in a number

of functional areas stemming from a diagnosis of anxiety, depression, and

ADHD.  R. 545-46.  The ALJ stated he was not giving "controlling weight"

to the opinion of Dr. Buhrmann, "as it is not well-supported and is

inconsistent with other substantial evidence including his own treatment

notes from March 1, 2012, in which the claimant was found to have normal

concentration, no memory problems and was oriented times 4."  R. 27.

The ALJ said nothing further regarding the weight afforded to Dr.

Buhrmann's opinion.

It is well-established that substantial or considerable weight must be

given to the opinion, diagnosis and medical evidence of a treating

physician unless "good cause" is shown to the contrary.[22]  If a treating

physician's opinion on the nature and severity of a claimant's impairments

is well-supported by medically acceptable clinical and laboratory

diagnostic techniques, and is not inconsistent with the other substantial

evidence in the record, the ALJ must give it controlling weight.[23]

While there is no requirement for the ALJ to discuss every medical

record in the administrative record, he is "required to state with particularity

the weight he gave the different medical opinions and the reasons

therefor."[24]  Additionally, because an ALJ is not permitted to substitute his

judgment for that of the medical experts,[25] the ALJ cannot reject portions of

---

[22] Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records.").  See also Edwards v. Sullivan, 937 F.2d 580, 583-584 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

[23] 20 C.F.R. § 404.1527(d)(2).

[24] Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990)(noting "the ALJ should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence").

[25] Graham v. Bowen, 786 F.2d 1113, 1115 (11th Cir. 1986); Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982).

a medical opinion without providing an explanation for such a decision.[26]

Where an ALJ fails to sufficiently explain how he reached his decision, the

Court may not speculate.[27]

The Court concludes that the ALJ in this case erred in weighing and

evaluating Dr. Buhrmann's treating physician opinion regarding the

functional limitations imposed by Plaintiff's anxiety, depression, and ADHD.

Although the ALJ stated that he was not giving the opinion "controlling

weight," he wholly failed to articulate "with particularity the weight he gave"

to the opinion "and the reasons therefor."[28]

The Commissioner argues that it is clear from the decision that the

ALJ gave Dr. Buhrmann's opinion *no* weight, based on the ALJ's

conclusion that the opinion was "not well-supported and is inconsistent

with other substantial evidence including his own treatment notes[.]"  ECF

No. 31 at 7.  But the ALJ's opinion does not express what weight – if any –

was afforded to the opinion, and in the absence of any explanation the

Court will not engage in speculation.

---

[26] <u>Morrison v. Barnhart</u>, 278 F. Supp. 2d 1331, 1337 (M.D. Fla. 2003).

[27] <u>Owens v. Heckler</u>, 748 F.2d 1511, 1516 (11th Cir. 1984).

[28] <u>Lucas</u>, 918 F.2d at 1574.

To determine the weight to be accorded a treating physician's opinion, the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d), which include the length of treatment, frequency of examination, nature and extent of the treatment relationship, support of opinion afforded by medical evidence, consistency of opinion with the records as a whole, and specialization of the treating physician.  The record in this case does not reflect that the ALJ considered each of these factors, except for his conclusional statement that the opinion was not "well-supported" and was inconsistent with "other substantial evidence."  R. 27.

In support of the latter point, the ALJ pointed to treatment notes from March 1, 2012, and stated that on that date Plaintiff was found to have "normal concentration, no memory problems and was oriented times 4."  R. 27.  As the Plaintiff points out, the ALJ's decision selectively focuses on three "normal" findings in one treatment note while failing to account for evidence that arguably supports Dr. Buhrmann's opinion regarding functional limitations.  For example, the same note relied upon by the ALJ also notes that Plaintiff's facial expressions were constricted, his mood was anxious, and his "decisionmaking skills were paralyzed."  R. 558.  The

next month, Plaintiff was assessed with memory problems, his eye contact was fleeting, and he exhibited variable reality testing.  R. 555-556; *see also* R. 558 (March 2012 note assessing reality testing as only "fair").  At that time, in February 2012, Dr. Buhrmann assessed Major Depression and a GAF of 40 "at this time and in the last year."  R. 556.

On this record, the Court concludes that the ALJ's decision does not demonstrate "good cause" for rejecting Dr. Buhrmann's opinion because the ALJ's decision does not state with particularity the weight afforded to the opinion and does not adequately account for the factors that must be considered in determining the proper weight afforded to his opinion. Remand is necessary so that the ALJ can properly account for the relevant factors and adequately explain the basis for evaluating the treating physician's functional assessment.

Plaintiff further contends that the ALJ, while purporting to rely on the opinions of the State Agency consultants by affording them "significant weight," failed to discuss or properly reject the opinions from the same sources that suggest greater limitations than those found by the ALJ.  The ALJ determined that Plaintiff had only mild limitations in social functioning and included no limitations in the RFC.  R. 15-16.  Both Dr. Hamlin and Dr.

Deaver assessed Plaintiff with "moderate" limitations in social functioning

with respect to his ability to accept instructions and respond appropriately

to criticism from supervisors, and in his ability to work in coordination with

or in proximity to others without being distracted by them.  R.  65, 78, 102,

120, 122.  In addition, Dr. Hamlin found moderate limitations in Plaintiff's

ability to respond appropriately to changes in the work setting and opined

that Plaintiff only "appears capable of adjusting to smaller changes in a

stable, nonstressful setting."   R. 100-103, 120-21, 123.  Dr. Hamlin also

opined that Plaintiff may  "have some difficulty in completing an 8 hour day

without experiencing mild depressive symptoms[.]" R. 102.  He found that

Plaintiff's ability to get along with coworkers or peers without distracting

them or exhibiting behavioral extremes, as well as his ability to perform at

a consistent pace without an unreasonable number and length of rest

periods. an unreasonable number and length of rest periods, was

moderately limited.  *Id.*  This opinion was ostensibly afforded "significant

weight" by the ALJ, but there is no explanation as to why such weight did

not merit the inclusion of any functional limitations in the RFC.  Remand is

necessary so that the ALJ can adequately explain the basis for rejecting these opinions in formulating Plaintiff's RFC.[29]

## B. *Plaintiff's Subjective Complaints*

Plaintiff alleges that the ALJ erred in failing to credit his testimony regarding the limiting effects of his mental impairments.  The ALJ determined that Plaintiff's testimony regarding the limiting effects of his impairments was not wholly credible.  In making this determination, the ALJ observed that Plaintiff's daily activities "are not limited to the extent one would expect given the complaints of disabling symptoms and limitations."  R. 25.  The ALJ described Plaintiff's activities as "self-restricted," and not due to any medical advice or opinion.  *Id*.  The  ALJ pointed to Plaintiff's Function Report, which he said reported an ability to perform meal preparation, housework, yard work, and helping his son with

---

[29]Plaintiff also asserts that the ALJ erred in rejecting Dr. Lebedun's conclusion that Plaintiff would struggle in finding and maintaining employment and Dr. Khine's conclusion that Plaintiff's cognitive functioning had declined as a result of prolonged depression. ECF No. 30 at 17-19.  The ALJ afforded these opinions "little weight," concluding that the physicians had relied heavily on Plaintiff's subjective reports.  R. 26.  Plaintiff contends that these "generic grounds" are insufficient when the physician's notes reflect supporting clinical evaluations and observations, as summarized above. ECF No. 30 at 17-19.  Because remand is necessary for further proceedings regarding the ALJ's assessment of the other medical evidence, the analysis of this evidence should be revisited as well.

homework.  *Id*. (citing Function Report, Exhibit 7E).  The ALJ noted that

despite his claimed inability to sleep, Plaintiff was still able to drive.  *Id*.  He

further noted that Plaintiff had not always been compliant with his

medication.  *Id*. at 26.

In *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir. 1986), the

Eleventh Circuit adopted the following pain standard:

> There must be evidence of an underlying medical condition
> and (1) there must be objective medical evidence to confirm
> the severity of the alleged pain arising from the condition or (2)
> the objectively determined medical condition must be of a
> severity which can reasonably be expected to give rise to the
> alleged pain.

If the Commissioner rejects a claimant's allegations of pain, he must

articulate explicit and adequate reasons, and these reasons must be

based on substantial evidence*.  Hale v. Bowen*, 831 F.2d 1007, 1012 (11th

Cir. 1987).  A clearly articulated credibility finding with substantial

supporting evidence in the record should not be disturbed by a reviewing

court.  *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995); *MacGregor v.*

*Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).

As Plaintiff asserts, his Function Report, dated in October 2010, in many respects supports Plaintiff's subjective complaints and limitations. For example, Plaintiff reported that meal preparation only lasts "5-10 min[utes]" due to the need to simplify and "[o]nly cook quick meals"; mowing the lawn takes "longer than usual"; house and yard work is something he makes himself do, and "it is a huge struggle".   Plaintiff reported that he feels exhausted, is not functioning, and his ability to function is greatly diminished by an overwhelming need to sleep.  R. 267-74.   It appears that the ALJ relied on some statements in Plaintiff's Function Report without adequately explaining why his other statements, which arguably support his hearing testimony, should be rejected.  Further, Dr. Buhrmann's opinion regarding Plaintiff's functional limitations (which must be revisited on remand) arguably supports Plaintiff's subjective complaints.

On this record, the Court cannot find that the ALJ's reasons for discrediting Plaintiff's subjective complaints are adequately articulated or supported by substantial evidence.

### C.  *Steps Four and Five*

Plaintiff contends that the ALJ erred in determining at Step Four that he has the RFC to return to his past work as a Banquet Waiter, and erred in his alternative conclusion at Step Five that there was other work that Plaintiff could perform.  Because remand is necessary with respect to the ALJ's assessment of the medical evidence and Plaintiff's credibility in formulating the RFC, it is unnecessary for the Court to address whether the ALJ's findings at Steps Four and Five, based on the flawed RFC, are correct.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner so that the Administrative Law Judge may conduct further proceedings consistent with this Report and Recommendation.

**DONE AND ORDERED** this 29th day of August 2016.

*s/ Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**